This is a case of the State of Illinois v. Errol McDade, 1-7-21-113. Good morning. As you know, this is the 1st District, 2nd Division, and the justices to hear the case are Terry Levin, Aurelia Puchinski, and myself, James Fitzgerald Smith. As follows, here's our procedure. First, the appellant will present her case. There'll be no interruptions. We'll just let you do your work. Then after that, we'll ask questions. And this is, you get the 10 or 15 minutes. And after that, then the appellee will present her case. And then again, we'll ask questions. And at the end of the day that the appellant will have their opportunity. And again, a few questions. With that, are you guys ready? And if you feel uncomfortable, because this is not a fun system. As a matter of fact, I think it's horrible. But if for some reason you lose your train of thought, raise your hand or say, can I pause for a second? So with that, you may proceed. Good morning, Your Honors. My name is Sarah Curry from the State Appellate Defender. I represent Errol McDade. Errol McDade was charged with domestic battery pursuant to an incident that occurred between McDade and his longtime girlfriend, Charlene Mayfield, on March 19, 2016. Yet McDade's trial became more about the five other incidents of alleged domestic violence that occurred between McDade and Mayfield over a nine-year period. The jury was told to convict McDade, not because he was guilty of the crime charged, but because of the countless other incidents that, according to the state, constituted the most compelling evidence in the case. Section 115-7.4 of the Code of Criminal Procedure allows for the introduction of evidence of other incidents of domestic violence in domestic violence cases for its bearing on any matter to which it is relevant. In weighing the probative value of this evidence against undue prejudice, the trial court may consider the proximity in time to the charged offense, the degree of factual similarity to the charged offense, and other relevant facts and circumstances. However, when evidence of prior acts of domestic violence are admitted, the evidence should be limited to assure that the jury is not over-persuaded by the other crime's evidence and finds the defendant guilty because he is a bad person deserving of punishment. It should not, as the state argued here, be the most compelling evidence in the case. The trial court erred in allowing the state to introduce evidence of five other incidents of domestic violence, where Mayfield's testimony regarding these incidents constituted over a third of her testimony, where there was a lack of similarity and proximity in time to the charged offense, where the state focused on this evidence in opening statement and closing argument, where the state's evidence of the charged offense was so weak. Under these circumstances, the jury was prevented from fairly determining whether McDade was guilty of the charged offense. Of the five other incidents of domestic violence admitted at trial, one occurred in 2009, almost six years before the alleged incident in this case, and one occurred in 2007, almost eight years before the incident in this case, both significantly remote in time. Moreover, while the alleged incident in this case involved a physical altercation between McDade and Mayfield in their apartment, the two most recent other incidents involved McDade making a verbal threat to Mayfield while holding a knife from across the street and McDade and Mayfield's sister pulling knives on each other in the library, nothing like what allegedly occurred here. The state's focus on the other crimes evidence at trial asked the jury to convict McDade, not because of the facts of this case, but because he was a horrible person deserving of punishment. In opening statement, the prosecutor told the jury it would hear about the countless times McDade had abused Mayfield, beaten her, hit her. In closing argument, the prosecutor described the prior incidents in great detail. The prosecutor also argued that the other crimes evidence constituted an impressive list, that McDade had beaten Mayfield for God knows how long, and that the evidence of the prior incidents was the most compelling evidence in the case. McDade was further prejudiced by the other crimes evidence where the court overruled defense counsel's objection to Mayfield's testimony that this was this was McDade's MO. He did that all the time. However, none of the five other incidents that Mayfield described involved McDade beating Mayfield and taking her phone and wallet. Thus, Mayfield was necessarily testifying to additional incidents that were not part of the state's pretrial motion to admit other crimes. The state exacerbated this error by highlighting Mayfield's closing argument. She did what she had to do. She did what she thought she had to do to get the police there before it was too late, before she was beaten, because this was his MO, her words, not mine. This is what he does. He beats her, he takes her stuff, he takes her keys, he takes her phone so she won't call the police over and over and over again. She knew what was going to happen, and ladies and gentlemen, it certainly did. However, there was no evidence that this had happened before. The state's case against McDade was weak. The determination of McDade's guilt or innocence depended entirely on Mayfield's credibility, and her testimony was incredible, unbelievable, and contradictory. Mayfield contradicted herself by whether McDade was living with her in the apartment at the time of the incident. Mayfield testified that on March 19th, McDade returned to the apartment 20 to 40 minutes after leaving for work. While he was still outside the apartment, he did not have a key. Mayfield called 9-1-1 and told the operator that McDade had beaten her up and taken her wallet and keys. Then, despite testifying that she was in here for her life, she opened the left apartment door to see if McDade was still there. According to Mayfield, McDade entered the apartment, they argued, and he then beat her up, took her keys, phone, and wallet, exactly as she had just described to the 9-1-1 operator. There was no physical evidence of was gone. Clearly, the jury had questions about Mayfield's credibility, where it found McDade not guilty of aggravating domestic matter mattering, despite Mayfield's testimony that McDade strangled her. McDade was on trial for events occurring on March 19, 2016, yet the trial court permitted the state to present extensive detailed evidence of five specific prior incidents of domestic violence and countless other unspecified incidents. Even if some of this evidence had a relevant purpose, the sheer volume of evidence of the other incidents and the state's focus on this evidence was extremely prejudicial to McDade. As such, this court should reverse and remand for a new trial where the proper limits of such evidence can be expressly defined. I'd like to touch briefly on the second issue as well. At sentencing, the parties mistakenly believed that McDade was eligible for extended term sentencing based on his 1997 conviction for armed robbery. As such, the trial court sentenced McDade to an extended term sentence of nine years. McDade was not, however, eligible for an extended term. The prior conviction upon which his extended term sentence was based was a February 7, 1997 conviction for armed robbery for which he was sentenced to six years in prison. Between February 7, 1997 and the date of conviction, in this case, July 28, 2017, excluding the time McDade was either in the custody of IDOC or CCDOC, he was not in custody for more than 10 years. As such, he was not eligible for an extended term. The state argues that the time McDade spent on MSR or parole during this period should be considered time spent in custody for purposes of calculating the 10-year period. In Peabody Smith, this court held that time spent on parole constituted time spent in custody pursuant to section 5-5-3.2. McDade contends that Smith was wrongly decided and should not control the court's decision in this case. In Robinson, the Illinois Supreme Court described the purpose of the extended term provision as imposing harsher sentences on offenders whose repeated convictions have shown their resistance to correction. One can assess an offender's tendency to recidivism only when, having served his sentence, he has returned to society. His behavior while in custody can hardly be viewed as a reliable indicator of the likelihood of his committing an offense once released. When a person is on MSR, he has been returned to society, and his tendency to recidivism can be assessed. The Smith court based its decision on Article 123 of the Code of Criminal Procedure, which governed defendant's status on parole at that time. However, that section has since been repealed, and thus Smith should not control this court's decision. While section 3-14-2A of the Unified Code of Correction states that the department shall retain custody of all persons placed on parole for mandatory supervised release, this custody refers to constructive custody rather than physical custody. Based on the intent of section 5-5-3.2, it is logical to conclude that the legislator intended in custody to mean physical custody rather than constructive custody. Because the victim did not commit the same or similar class felony within 10 years, excluding the time spent in custody, he was not eligible for an extended term. This court should reduce the improper extended term sentence to seven years, the maximum non-extended term, or remand for a new sentencing hearing. And with that, I'll take your questions. My first question is, are you saying that none of these past experiences have been allowed in? I'm not saying that. I'm saying that the sheer volume with the five incidents that were allowed in, it overshadowed the rest of the evidence in the case, and it was too much. It was too much. I'm not at all saying that some of the incidents could not have come in, just that five was too many. These five were too many. And I tend to agree with you in part that it seems like we've gone back a ways, but under section 115-7, they're allowed to use preemptive. It's kind of hard to avoid using what her past is in her past, even though they're not the sweetest people. It's hard to not let five that were used in. It was not really objected to, to any extent, the five. The defense did object to the five that were coming in. There was a pre-trial hearing, and the defense did object to certainly all five of these coming in, especially the two that were most remote in time. Anybody else have questions? Lavin, no questions here. I just want to point out that when you're talking about section 115, one of the important considerations is whether or not this is the same victim, and this is the same victim in all these crimes of domestic violence. It's not some other person. It's the same victim. So, clearly, they have a very troubled history, and I think that that's the exact purpose of section 115. Yes, and it is a similarity that it is the same victim. However, even if you find them to be relevant, you still need to judge the prejudicial value, and less than five of these incidents could have come in, and it still have served its relevant purpose. Beyond the fact that these five incidents were introduced, it was the focus of these five incidents at trial and the suggestion that it was because of these five incidents that the jury should find them guilty, not based on the evidence of the case. Really, the evidence in this case was lost sight of because the focus was so heavily on these prior incidents. Well, but section 115 allows you to present this evidence because the public policy is that people need to know whether or not there's a likelihood that this continuing violence against this particular victim is going to continue, and here you have a history, a long history of violence against this victim. So, keeping out that information wouldn't give you a context of their relationship and what was going on. This defendant has continued hostility towards this victim and continued acts of violence against this victim, and if the jury hadn't known that, if they'd seen this as one incident that was isolated, they wouldn't have seen the entire context of this relationship, which was troubled and very distressing to the jury. But they had to have the context. Well, and again, I'm not saying that none of these incidents should have come in, but the case law interpreting this statute says you also have to look at, you can't let this evidence take over the case because you can't have the jury finding him guilty because of these prior incidents. The jury still has to find him guilty based on the facts of this case and the charge defense, and here, where the evidence was weak, adding these five incidents, the jury was very likely to have found him guilty because of these prior incidents, and that is highlighted by the fact that they found him not guilty of the aggravated domestic battery, despite her testimony that he had strangled her. Any other questions? No. All right. Appellee, you may proceed. Thank you, your honors. Good morning. Good morning, your honors, and good morning, counsel. The trial court properly exercised its discretion in allowing the other crimes evidence. There is no dispute here that it was relevant under the proper balancing act, weighed the probative versus the prejudicial value of it, and considered all the necessary factors for the assessment. Based on that, it allowed and ultimately admitted five out of the ten. It looked at the fact that the same victim was in each incident. It had the same showing a weapon. It was proximate to the charged incident on March 19, 2016. Two of the incidences admitted were within days of the charged offense. One was within a year, and two were within eight years, and under Donahoe, the court considered prior incidences that were prior. The Donahoe court did recognize that the longer and more remote that it became, that it became less probative, and in this case, looking at the trial court's ruling, the trial court was fully aware of that and acknowledged that as he was going through all of the incidences, and in fact, used that as his reason for not allowing the legal offenses, the four later offenses that he said would not be admitted. He also noted, and the trial court that under the statute, it was relevant to show not only intent, but a continuing animosity by the defendant towards the victim and put the entire charged offense in context regarding the relationship between the prior incidences and the charged offense, but the trial court, in addition to limiting the amount of evidence admitted, also gave the jury a limiting instruction on that. And specifically told it under 3.14, the purposes for which it could be viewed. And because this evidence was properly admitted under the act, it was proper for the state's attorney to argue it as propensity evidence. It wasn't overly presented to the jury. I mean, prosecutor does not need to water down their evidence, but what they did in this case was they elicited what necessary detail to apprise the jury of what occurred consistent with the trial court's ruling in this case, and there was no errors made during the opening or closing. I mean, not a single objection was waged. They argued the evidence. It was properly argued as propensity evidence. And when you see words taken out of context or not in context with the entire argument that defense counsel relies on, I mean, it's clear that in opening and closing, the most damaging interpretation should not be given to words used by the prosecutor where when taken in context was entirely proper and within the scope of closing argument and opening argument. With respect to the victim's credibility, there was no evidence, you know, this was the evidence that the jury convicted on. That's absolutely not true. The victim testified regarding her relationship with her prior incidences, but specifically testified to what occurred on the how she was dating someone where defendant came back. She was afraid because of her knowledge of her relationship with defendant. And in addition to the testimony that the jury heard and heard all of the, you know, the cross-examination and on things that defense counsel now is claiming was not credible, the jury was fully aware of that and still and had the opportunity to view her demeanor and view her story and found her to be credible. And her testimony was corroborated by the 911 videotape that was introduced, as well as Officer Vanegas, who actually saw her when she did have an opportunity to leave defendant as he was sleeping, and she waved him down and he injuries to her forehead, which was consistent with her testimony, and the fact of her outcry, that defendant did this to me. Based on all that, which the jury heard, they did not find solely on the other crimes evidence, but it was properly utilized to put the charged offense in proper context in the relationship. And for those reasons, no error occurred. The trial court discretion was and that ruling should be affirmed. The opening and closing arguments by the state were excessive? No, Your Honor, they were not. They were in keeping with what is what is allowed in opening or closing. With respect to one of the statements that was made that is claimed to have been prejudicial, the countless times that he beat her, that was made an opening in opening by the by the prosecutor. And yes, now, Defense Counsel presents this court in a reply brief with a definition of what countless means. But again, the most damaging interpretation cannot be given in hindsight to what the state's attorney was, was saying to the jury at the time of trial. And in here, he used a general term countless, because it was opening statement, he was preparing the jury for the evidence that they would rightfully hear because of this motion in limine ruling, allowing that. But as what happened, with respect to six, the trial court allowed six incidences based on the hearing that was held, and the state opted to pick put in only five based through the testimony of the victim. And so for the court for the state to use a general term countless, instead of saying six or five or four or three, which may not have accurately depicted what ultimately happened in at the trial, I believe was actually a prudent thing for the state's attorney to do and was within keeping of what an opening statement can be. With respect to the other phrase, the compelling, the compelling evidence, the most compelling evidence that also has to be put in context in the closing argument, where it was referring to and which the prosecutor can argue the victim's credibility regarding the other incidents. And it was in direct response to the defense argument, which challenged not only the victim's credibility, but also said that where's the convictions. And in response to that, the prosecutor in rebuttal properly pointed out that a conviction is not necessary to admit the prior incidences under the domestic violence statute, and that the victim's testimony on the incidents can be enough. And in fact, in this case was compelling, was compelling enough. And so again, in context, it was entirely within the proper scope of closing argument, and it was not it was not improper. Any further questions? All right. I just like to I'm sorry, with respect to argument number two, and I'm sorry, I should have said I wanted to just briefly, and I apologize, but with respect to the I'm sorry, with respect to the sentencing issue, I would note that the people's position is that people versus Smith is good law, that it does on point address the extended sentencing, and does say that for purposes of custody within the statute term, that it does include parole, and that the below the defense counsel and state's attorneys properly calculated under Smith, and showed that he was extendable. The, you know, the appellate counsel now claims that trial counsel was ineffective for agreeing that he was extendable, but Smith was good law, relied upon below. And so he cannot be ineffective for actually being consistent with the law. Um, the defense is asking for Smith to be deemed wrongfully decided position that it is absolutely correct. And it is consistent with the fact that the department retains custody of persons in MSR. It is also consistent with the Robinson aim of what the recidivist statutes are, the goal is, and it was consistent to include parole, since it shows an inability to correct behavior, why there is oversight. Montgomery, in fact, defined what it means to not include parole and use the term confinement. And I would refer this court's attention to people versus Sanchez, cited by defendant, where the court recognized the difference between confinement and custody uses of terms in statutes. Um, and that the calculations here, he was extendable, um, and below the core trial court was absolutely correct in sentencing him to an extended sentence. And for the reasons stated here, as well as in our briefs, we would ask that the conviction as well as the sentence be affirmed. Thank you. Any further questions? No. Sarah, you may proceed. I just, I just wanted to touch briefly on the prosecutor's arguments and opening and closing. And, you know, it's easy in hindsight to come up with arguments to make statements proper, but countless means countless. We know what countless means. It means more than five. It means too many to count and tell the jury that there were countless incidents. It goes beyond what the retrial, uh, order allowing the five prior incidents to come in, um, provided for moreover. And the prosecutor did tell the jury that the prior was the most compelling case right there in the closing argument, the most compelling evidence in the case, the facts related to the incident for which he was charged should be the most compelling evidence in the case. The jury convicted McDade because it found the prior incidents to be the most compelling evidence in the case. And that conviction should not stand. The fact of the charge offense should be the most compelling evidence in the case. And the facts of the charge offense in this case were very, very weak. Any questions? No. All right. Thank you very much, both of you. Um, the briefs very well done and your arguments were very entertaining and interesting. I appreciate your hard work. Um, we'll let you know as soon as we get together and figure out, um, the result again. Thank you and have a good day and stay safe.